Morgan, J.
D. & J. D. Edwards obtained judgment against Fairbanks & Gilman for $17,609 45 for machinery furnished and work and labor performed in a refinery which is alleged to belong to the defendants.
Under execution the machinery was seized. Subsequently, certain sugars and molasses found in the refinery, and which had been refined there, were also seized.
The New Orleans Mutual Insurance Company claim that the machinery seized belongs to them. Cavaroc & Son aver that the sugars and molasses seized are their property. The insurance company claims the property under a notarial act, dated November 8, 1872, in which it is declared by Fairbanks & Gilman that they had sold certain *450 machinery, etc., which, is detailed in the act, to the company for $25,000, reserving to themselves the right of redemption within three years on the repayment of the like sum.
By the same act the machinery, etc., was to remain in the possession of Fairbanks & Gilman; the building in which it was located was rented to them for several years upon their paying a monthly rent therefor. To which the plaintiffs answer that, as an insurance company, the laws of Louisiana will not permit them to enter into any such contract as that now set up, and that the contract now insisted upon being in direct violation of. their charter, as well as the law, can not be enforced against any third person not party or privy to it, who-has rights independent of it, and growing out of it. It may be admitted that the company had no right to purchase the property in question from Fairbanks and Gilman. Does that make the property liable to Fairbanks & Gilman’s creditors in payment of their debts ! We think not. If the company did any thing contrary to law, the result might be a forfeiture of its charter. But we do not understand the law to be that if a corporation acquires property in a manner even prohibited by law, the property thus acquired still belongs to the vendor who has received his price, and that it can be seized by his creditors to pay his debts. Admitting that the purchase by the company transferred the title, the formalities of the law with regard to its tradition having been complied with, the next question in this case is whether the requisites of the law were complied with; that is to say, the objects sold being machinery, were they movables? If movables, was delivery necessary to complete the title to them ? Was there a delivery? The buildings in which-Fairbanks & Gilman’s machinery was contained belongs to Del Bondio; Del Bondio leased to Willoz; Willoz transferred his lease to Fairbanks & Gilman.
On the eighth November, 1872, Fairbanks & Gilman sold all their interest in certain machinery contained in that building to the New Orleans Mutual Insurance Company, who acknowledged possession of the same for $25,000. To the sale was attached the power of redemption, and it was stipulated that in ease Fairbanks & Gilman paid back to the insurance company the amount received by it within three years, there was to be a retrocession of the property sold. By the same act Fairbanks & Gilman transferred to the insurance company their lease of the property. And by the same instrument the insurance company leased the building and the machinery therein contained to Fairbanks & Gilman, who were allowed to make such alterations upon the buildings and improvements, and to add thereto such new machinery and apparatus as might better adapt them for|the purposes for which they were intended.
*451 The sale of the machinery was, we think, a valid sale. Fairbanks & Gilman remained in possession, it is true, but they held by a precarious title, to wit, a lease, and could have been divested of possession at any time if the conditions of the lease had not been complied with. We think, therefore, that the machinery mentioned in the act of sale of the eighth November, 1872, was not liable to be seized under execution to pay Fairbanks & Gilman’s debt. We also think that the machinery thus sold was paid for by Fairbanks & Gilman either at the time the sale was made or before this suit was instituted. This would, of course, destroy whatever privilege the Edwardses had as vendors.
But the record shows from the testimony of witnesses on the part of the intervenors, that besides the machinery, etc , covered by the act of sale, there were other articles belonging to Fairbanks & Gilman, worth some $30,000. The insurance company, however, says that if this be the fact, the instant Fairbanks & Gilman acquired the same as owners, the title of the company eo instanti attached, and it became the owner thereof, and the possession of Gilman & Fairbanks was the possession of the company.
The result of this doctrine, if correct, would be that if a man leases a building and that which the building contains at the time of the lease, everything which the lessee puts into the building would become the property of the lessor. We find no authority upon which such a conclusion could rest.
It does not, therefore, in our opinion, matter whether the goods furnished by IJ. & J. D. Edwards, after the sale from Fairbanks & Gil-man to the insurance company, were paid for or not. There is no doubt in our mind that the debt claimed by the Edwardses is due, and whether due or not is no concernment to the company. They have the right to protect their own property from illegal seizure, but they have no authority to prevent a creditor from making his debt out of the property of his debtor.
The only question before us is whether the property sold to Fairbanks & Gilman, after their sale to the insurance company, belongs to Fairbanks & Gilman, or whether it belongs to the insurance company, who never bought or paid for it. It seems to us that the question answers itself. The authorities cited, 5 An. 532; 12 La. 170; 9 La. 99; 5 N. S. 247; 16 La. 94, do not, in our opinion touch the question at issue here.
We conclude, therefore, that all the machinery and materials, which was not mentioned in the act of sale of the eighth of November, 1872, and all the machinery and materials put into the building' by D. & J. D. Edwards, since that period, are liable to their execution.
*452 Whether or do the company have the landlord’s lien on these effects can not now be settled. If they have, when the property is sold, they can exercise it.
As regards ihe intervention of Cavaroc & Son, it must, we think, be maintained.
Cavaroc & Son were commercial copartners. Fairbanks & Gilman were sugar refiners.
Cavaroc & Son agreed to furnish raw sugars and molasses, which Fairbanks & Gilman agreed to refine. The compensation they were to receive for this work was two-thirds of whatever profit Cavaroc & Son might make out of the sugars and molasses. At the time of the seizure a quantity of sugar and molasses, which had been furnished by Cavaroc & Son, was in the possession of Fairbanks & Gilman. The relations between Cavaroc & Son and Fairbanks & Gilman were not those of partners, each liable for the acts of the other. No part of the property seized ever belonged to Fairbanks & Gilman. What they were to receive from Cavaroc & Son was in reality only a stipulated price for work which they agreed to perform. Whether Cavaroc & Son owed anything to Fairbanks & Gilman or not on account of their transactions is another matter. But this question can- not be decided in the present controversy. The only thing for us to decide is whether the property seized is or not liable to the payment of Fairbanks & Gilman’s debt.. We think it is not.
The district judge gave judgment in favor of plaintiffs, decreeing them entitled to a privilege on all the machinery and apparatus used and contained in Fairbanks & Gilman’s refinery; dismissed the intervention of the New Orleans Mutual Insurance Company; maintained ■the intervention of Cavaroc & Son, and gave judgment in favor of Fairbanks & Gilman for two-thirds of the net profits that have been or mayjbe hereafter realized from the sale of the sugar and molasses manufactured by them in their refinery, under their contract with Cavaroc & Son.
The judgment is partly right and partly wrong. It is right in so fiar asjjit gives to plaintiffs a privilege, by virtue of their seizure, upon the machinery found in the defendants’ refinery, and placed there after the sale from them to the insurance company. It is wrong in decreeing the property purchased from the defendants by the insurance company liable to pay the plaintiffs’ debt. It is wrong as regards the dismissal of the insurance company’s intervention, in so far as the property purchased from the defendants is concerned. It is right in dismissing the intervention in respect to the machinery purchased by the defendants subsequent to the sale to the company. It was right in maintaining the intervention of Cavaroc & Son, but it is wrong in *453 passing upon the question of interest in the profits of the sugar and molasses which had been manufactured by the defendants. This is. not the proceeding in which such an interest can be ascertained.
It is therefore ordered that the judgment of the court a qua be-amended by decreeing that all the machinery found in the building, subsequent to the act of sale be subject to the plaintiffs’ execution, and that the intervention of the insurance company be maintained in so far as the property mentioned in said act of sale is concerned; that the intervention of Cavaroc & Son be maintained; that the question of interest of Cavaroc & Son and Fairbanks & Gilman in the profits arising from the manufactured sugars and molasses, found in the building at the time of the seizure, be reserved, and the question of the landlord’s privilege be reserved. Costs to be paid by D. & J. D. Edwards.